Kelly, J.
On appeal from defendant’s conviction for unarmed robbery, the Court of Appeals reversed the judgment for insufficient evidence and remanded for entry of a conviction of larceny in a building. 242 Mich App 417; 619 NW2d 168 (2000). It provided that the prosecutor could retry defendant on the original unarmed robbery charge if it had additional evidence. Both the prosecution and defendant appeal from that decision.
We conclude that defendant could not be convicted of unarmed robbery under the facts of this case. We also reassert that a defendant cannot be retried on a charge not previously supported by sufficient evidence where additional evidence is discovered to support it. Therefore, we affirm the Court of Appeals decision in part, reverse it in part, and remand for entry of a judgment of conviction of larceny in a building and for resentencing.
I. FACTUAL AND PROCEDURAL HISTORY
Defendant took merchandise valued at approximately $120 from a Meijer store. After purchasing other items, he left the store with a rotary tool, a battery, a battery charger, and a thermostat without paying for them. The store’s loss-prevention staff observed the theft and acted to apprehend defendant when he emerged from the store.
There are several versions of what happened next. Taking the evidence in the light most favorable to the prosecution, when the plain-clothed security guards identified themselves, defendant lunged forward to *535 run. At least one guard seized him, putting him in an “escort hold.” Defendant broke free and swung his aim at the guards, physically assaulting at least one of them.[1] In his efforts to escape, defendant lost possession of the merchandise. The prosecutor charged him with unarmed robbery, and a jury convicted him as charged. MCL 750.530.
When it reviewed defendant’s unarmed robbery conviction, the Court of Appeals applied the “transactional approach,” which it adopted explicitly in People v LeFlore, 96 Mich App 557, 561-562; 293 NW2d 628 (1980).[2] Under this approach, a defendant has not completed a robbery until he has escaped with stolen merchandise. Thus, a completed larceny may be elevated to a robbery if the defendant uses force after the taking and before reaching temporary safety. See People v Newcomb, 190 Mich App 424, 430-431; 476 NW2d 749 (1991); People v Turner, 120 Mich App 23, 28; 328 NW2d 5 (1982); People v Tinsley, 176 Mich App 119, 120; 439 NW2d 313 (1989).
Applying that test, the Court of Appeals reasoned “there was insufficient evidence to support defendant’s conviction of unarmed robbery because defendant was unsuccessful in escaping and thus he never completed the larcenous transaction.” 242 Mich App 421. Therefore, it reversed the unarmed robbery conviction and remanded for entry of a conviction of larceny in a building, “unless the prosecutor opts to retry defendant on the original charge based on addi *536 tional evidence.” Id. at 423. We granted both parties’ applications for leave to appeal. 465 Mich 885 (2001).
II. UNARMED ROBBERY
Michigan’s unarmed robbery statute, MCL 750.530, provides:
Any person who shall, by force or violence, or by assault or putting in fear, feloniously rob, steal and take from the person of another, or in his presence, any money or other property which may be the subject of larceny, such robber not being armed with a dangerous weapon, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 15 years. [Emphasis added.]
Robbery is a crime against a person. People v Hendricks, 446 Mich 435, 451; 521 NW2d 546 (1994). As the Court of Appeals acknowledged in LeFlore,[3] “Both the armed and unarmed robbery statutes are clear that the forceful act must be used to accomplish the taking.”
We base our holding on the language of the unarmed robbery statute and the common-law history of unarmed robbery. From that we conclude that the force used to accomplish the taking underlying a charge of unarmed robbery must be contemporaneous with the taking. The force used later to retain stolen property is not included. Those Court of Appeals cases that have held otherwise, applying a “transactional approach” to unarmed robbery, are herein overruled.
*537 A. ROBBERY AT COMMON LAW
Michigan’s unarmed robbery statute is derived from the common law. The first robbery statutes, enacted in 1838, adopted the common-law definition of robbery, but divided the offense by levels of severity, depending on whether a perpetrator was armed. People v Calvin, 60 Mich 113, 120; 26 NW 851 (1886).[4] The 1838 codification of unarmed robbery is nearly identical to our current statute.[5]
At common law the elements of the offense of robbery were “the felonious and forcible taking, from the person of another, of goods or money to any value by violence or putting him in fear.” 4 Blackstone, Commentaries, Public Wrongs, ch 17, p 241; see also, People v Covelesky, 217 Mich 90, 96; 185 NW 770 (1921). *538 The force or violence had to be applied before or during the taking. See id. at 242. (“[T]he taking must be by force, or a previous putting in fear. . . .”)[6] (Empha *539 sis added.) Accordingly, the common law concerning robbery that was received by the drafters and ratifiers of our constitution required (1) a taking from the person, (2) accomplished by an earlier or contemporaneous application of force or violence, or the threat of it. If force was used later to retain the property, the crime committed did not constitute robbery.
Thus, consistently with the rule under common law, MCL 750.530 must be read to require a taking accomplished by “force or violence, or by assault or putting in fear.” The statute excludes a nonforceful taking, even if force were later used to retain the stolen property. By the same reasoning, force used to escape with stolen property is insufficient to sustain a robbery charge under our statute. Nonetheless, over the past thirty years, the Court of Appeals has created a doctrine that strayed from the language of MCL 750.530 and its historical common-law context.
*540 B. THE COURT OF APPEALS AND THE “TRANSACTIONAL APPROACH”
This Court has never recognized the “transactional approach.” In 1971, the Court of Appeals began to expand the codified common-law requirements of robbery. In People v Sanders,[7] it concluded that the defendant, having completed his theft “by stealth,” was guilty of armed robbery because he fired a gunshot into the air to frighten off pursuers. Although it recognized the general rule that “an assault must be concomitant with the taking in order to support a charge of armed robbery,” the panel relied on the law of other jurisdictions. Id. at 276. It held that there was “no valid basis for isolating the incidents of the entire event when the taking is not effectively completed until after the assault. . . . [A]nd the incident of the taking must be viewed in its totality in order to ascertain the intent of the defendant when the assault occurs.” Id. at 277. Thus, with the decision in Sanders, the Court of Appeals began its shift toward the “transactional approach.”
In LeFlore, the concept was identified by name and applied in the context of unarmed robbery. Id. at 561-563. In that case, the defendant took money from the victim after physically assaulting her. On appeal, he claimed that there was insufficient evidence to support the unarmed robbery conviction because the taking had been a mere afterthought. He claimed to have had no. larcenous intent at the time of the assault. The LeFlore panel held that the “larceny transaction should be viewed as a whole to determine the defendant’s intent.” Id. at 562.
*541 In Turner, the “transactional approach” was extended further to express that a robbery is incomplete until the defendant escapes with the stolen property:
We agree that a completed escape is unnecessary to constitute asportation. “Any movement of goods, even if by the victim under the direction of defendant . . . constitutes asportation . . . .” However, robbery is also a continuous offense: it is not complete until the perpetrators reach temporary safety. As such, while the essential elements were completed, the offense continued during the escape. [120 Mich App 28 (citations omitted; emphasis added).]
The Turner holding was repeated in Tinsley. The fiction found there, that a robbery is not complete until a defendant reaches temporary safety, gave rise to the Court of Appeals holding in the instant case: that the defendant must complete his escape with the stolen merchandise or he cannot be convicted of unarmed robbery.
This “transactional approach” can not be harmonized either with the language of MCL 750.530 or with the common-law history of our unarmed robbery statute.[8] As Judge William Blackstone stated:
*542 This previous violence or putting in fear is the criterion that distinguishes robberies from other larcinies. For, if one privately steals sixpence from the person of another, and afterwards keeps it by putting in fear, this is no robbery, for the fear is subsequent.... [Blackstone, supra at 242. [9]
Thus did Blackstone identify the real difficulty with the “transactional approach”: it inappropriately characterizes a completed larceny as a robbery.
It is useful to recall that at common law simple larceny was defined as “the felonious taking, and carry *543 ing away, of the personal goods of another.” Blackstone, supra, p 229; see also, People v Johnson, 81 Mich 573, 576; 45 NW 1119 (1890). Larceny was contrasted with robbery in that common-law larceny was a robbery minus the use of force to accomplish the taking and absent the requirement that the taking be “from the person.” Blackstone stated this cogently when he summarized: “This previous violence or putting in fear, is the criterion that distinguishes robberies from other larcinies.” Id. at 242.[10]
We emphasize that a larceny is complete when the taking occurs. The offense does not continue. This fact is illustrated in People v Bradovich,[11] in which two defendants in a store concealed two suits under their own clothing and attempted to leave. Realizing that store personnel were following them and that *544 they would be apprehended, they abandoned the stolen clothing and departed. When later charged with larceny, they claimed to have abandoned the property before leaving the store, and therefore, not to have completed the offense. This Court disagreed, holding that the larceny was complete when the thieves concealed the store’s clothing under their own. Id. at 332.
The dissent acknowledges that larceny and robbery are distinct crimes. That the two crimes are distinct offenses indicates nothing more than that they have different elements: robbery is a larceny aggravated by the fact that the taking is from the person, or in his presence, accomplished with force or the threat of force. People v Wakeford, 418 Mich 95, 127-128; 341 NW2d 68 (1983) (opinion of Levin, J.).
However, the dissent asserts without supporting authority that “for the purpose of the crime of robbery, the relevant act encompasses a broader spectrum of time, and includes not simply an initial larcenous taking, ‘by force and violence’ or ‘by assault,’ but a robbing of the victim ‘by assault’ when the property remains in the victim’s presence.” Post at 563. Neither the common law nor contemporary authority supports the view that the taking that establishes the larceny element of robbery continues until the robber reaches a place of temporary safety.
We reject the dissent’s reliance on cases from other jurisdictions because they are either distinguishable on their facts or inconsistent with the common-law view of robbery adopted by Michigan. We also find particularly instructive State v Manchester, 57 Wash App 765; 790 P2d 217 (1990). There, the Washington Court of Appeals, noting the split in jurisdictions on the question of the timing of the use of force, cited *545 Sanders, supra, and People v Beebe, 70 Mich App 154; 245 NW2d 547 (1976). Manchester placed Michigan with the majority of jurisdictions that do not consider a robbery complete until the robber has reached a place of temporary safety. The Court observed: “Because this approach does not follow the common law, courts focus on the language of the robbery statute to reach this result.” Id. at 770.
We agree that the “transactional approach” used by our Court of Appeals is contrary to the common law. As we have explained above, the language of our statute does not permit us to adopt the view espoused by the Court of Appeals and the dissent.
We are also persuaded by Tennessee v Owens,[12] where the Tennessee Supreme Court was faced with the question, “[H]ow closely connected in time must the taking and the violence be?” By way of response, the court compared the language of Tennessee’s robbery statute with the language of other states’ robbery statutes. The court noted that many jurisdictions have rejected the common-law rule in favor of the “continuous offense theory.” Id. at 638-639, 639, n 7.
However, most of those states have statutes that specifically define robbery to include the use of force to retain property or to escape. Id. at 639. Many of the statutes provide that a person commits robbery if he uses force “in the course of committing” a theft or larceny. See Ala Code 1975, § 13A-8-43; Ariz Rev Stat, §§ 13-1901-1904; Conn Gen Stat, § 53a-133; Del Code Ann, tit 11, § 831; Fla Stat, § 812.13; Hawaii Rev Stat, § 708-841; Minn Stat, § 609.24; Mont Code Ann, § 45-5-401; NJ Stat Ann, § 2C:15-1; NY Penal Laws, § 160.00; *546 ND Cent Code, § 12.1-22-01; Or Rev Stat, § 164.395; Tex Penal Code Ann, § 29.02; Utah Code Ann, § 76-6-301.
All the statutes define “in the course of” to include either “escape,” “flight,” “retention,” or “subsequent to the taking.” In other jurisdictions that follow this approach, the statutes specifically include the expressions “resisting apprehension,”[13] “facilitate escape,”[14] “fleeing immediately after,”[15] or used to “retain possession.”[16]
By contrast, other jurisdictions have statutes that follow the common-law rule requiring that the force, violence, or putting in fear occur before or contemporaneous with the larcenous taking. These states have statutes substantially similar to Michigan’s. See Ga Code Ann, § 16-8-40; Ind Code, § 35-42-5-1; Kan Stat Ann, § 21-3426; Miss Code Ann, § 97-3-73; NM Stat Ann, § 30-16-2; Term Code Ann, § 39-13-401; see also 93 ALR3d 647-649.
In summary, at common law, a robbery required that the force, violence, or putting in fear occur before or contemporaneous with the larcenous taking. If the violence, force, or putting in fear occurred after the taking, the crime was not robbery, but rather larceny and perhaps assault. Hence, the “transactional approach” espoused by the Court of Appeals is without pedigree in our law and must be abandoned. Sanders, LeFlore, Turner, and Tinsley are overruled.
*547 III. ANALYSIS OF THE CASE ON APPEAL
Turning to the facts of this case, the prosecution seeks to extend the transaction that began with the in-store taking to include the struggle in the parking lot. We point out that defendant not only failed to escape, but, more importantly, did not accomplish his taking by the use of force, violence, assault, or putting in fear.[17]
While store security personnel observed him, defendant removed several items from the display shelves of the Meijer store and concealed them beneath his coat. He continued to retain possession of this property as he picked up two quarts of oil, went to a checkout lane, paid for the oil and walked from the store. The first use of force or violence was in the parking lot when a security guard attempted to restrain him. Hence, his use of force or violence was not to take the property, but to retain it and escape apprehension. It follows that defendant did not commit the offense of unarmed robbery.
The dissent makes much of the fact that the unarmed robbery statute applies to a taking from “the person of another, or in his presence” but overlooks the context of that language. The dissent relies heavily on the notion of constructive possession and the intent to permanently deprive. However, we are left without a satisfactory explanation of why the use of force that does not accomplish a taking would escalate the offense of larceny to unarmed robbery.
*548 The dissent asserts that force used after a taking, while the victim has constructive possession of stolen property or while it is in the victim’s presence, supports a charge of robbery. Notably, however, in each of the dissent’s examples, the force used was to accomplish the ultimate taking. That did not occur in this case. The dissent attempts to merge a subsequent force not used to accomplish a taking with the completed taking that preceded the force.[18]
We think it significant that the statute identifies unarmed robbery as the taking of another’s property in the other’s presence “by force and violence, or by assault or putting in fear.” MCL 750.530 (emphasis added). If the physical taking were accomplished without force, assault, or fear, the statute does not permit treating the larcenous crime as a robbery because of a subsequent forceful act. Such force used to retain stolen property is simply outside the scope of MCL 750.530.[19] That defendant cannot be convicted of unarmed robbery is particularly clear here, because his force by no means accomplished a severing *549 of the store’s constructive possession of the merchandise.
We note that defendant’s taking of the merchandise in this case is indistinguishable from the taking in Bradovich. Therefore, when defendant placed the merchandise under his clothing, he committed a taking without force, and his conduct constituted a completed larceny. The concealment evidences that, at the time he took the merchandise, defendant intended to permanently deprive the owner, Meijer, of it. Defendant’s later acts, whether viewed as an unsuccessful attempt to retain the property or as an attempt to escape, are too removed from the completed taking to be considered contemporaneous.[20]
The dissent’s reliance on People v Podolski[21] is misplaced. In Podolski, this Court held the defendant responsible for felony murder when, after a robbeiy, one police officer shot and killed another while the robbers exchanged fire with the police. This Court did not base the felony murder on a “transactional” notion of robbery.
*550 Rather, the unanimous Court asserted that “ ‘when a felon’s attempt to commit robbery or burglary sets in motion a chain of events which were or should have been within his contemplation when the motion was initiated, he should be held responsible for any death which by direct and almost inevitable sequence results from the initial criminal act.’ ” Id. at 515-516, quoting Commonwealth v Moyer, 357 Pa 181, 190-191; 53 A2d 736 (1947). Where the issue is whether the force exerted during a robbery was used in taking the property of another, not whether it was a foreseeable consequence, Podolski is not on point. Therefore Podolski and its progeny are not persuasive by analogy as the dissent contends.
Finally, we disagree with the dissent’s claim that we have created an impractical framework for unarmed robbery. The dissent greatly exaggerates the confusion generated by overruling the transactional approach. The rule is simple: a defendant commits an unarmed robbery when he takes the property of another by the use of force, violence, or putting in fear. After the initial larcenous act has been completed, the use of force against the victim to retain the property taken does not transform it into armed robbery.[22] The force, violence or putting in fear must be used before or contemporaneous with the taking.
*551 We overrule the “transactional approach” to unarmed robbery and reassert that the force, violence, assault or putting in fear underlying the robbery must occur before or contemporaneously with the felonious taking. Because this defendant did not use force, violence, assault, or putting in fear to accomplish his taking of property, he did not commit unarmed robbery.[23] Accordingly, we agree with the Court of Appeals panel, albeit using a different analysis, that the charge of unarmed robbery was not supported by the evidence. Therefore, we affirm its decision insofar as it reverses defendant’s conviction.
*552 IV. THE REMEDY
We find that the Court of Appeals erred when it provided that, with new evidence, the prosecution could retry defendant on the originally charged offense. See Burks v United States, 437 US 1, 18; 98 S Ct 2141; 57 L Ed 2d 1 (1978); People v Bullock, 440 Mich 15, 26, n 7; 485 NW2d 866 (1992); People v Murphy, 416 Mich 453, 467; 331 NW2d 152 (1982). The prosecution concedes that this was error.[24] Defendant agrees that, if defendant’s unarmed robbery conviction is overturned, the proper remedy is a remand for entry of a conviction for larceny in a building. MCL 750.360.[25]
The prosecution proposes, as an alternate position, that this case be remanded to the trial court for retrial on the lesser offense of assault with intent to commit unarmed robbery. On the basis of our construction of the unarmed robbery statute, we reject *553 that approach. To support a charge of assault with intent to commit unarmed robbery, the prosecutor would again merge the initial taking with the force used to retain possession of the merchandise. The taking and the force are too attenuated to support those charges. The larceny in a building conviction better fits the facts of this case.
Because the Court of Appeals decision to allow retrial is in error, we reverse that portion of the opinion, but remand the case to the trial court. That court is to enter a conviction on the lesser offense of larceny in a building, on which the jury was charged and that was necessarily subsumed in its verdict.
V. conclusion
In conclusion, the Court of Appeals correctly determined that there was insufficient evidence to support defendant’s conviction for unarmed robbery. Because the defendant completed a taking without using force, violence, assault, or putting in fear, he could not be convicted of unarmed robbery.
We remand to the trial court for entry of a conviction for larceny in a building and for resentencing. Defendant cannot be retried for unarmed robbery. The opinion of the Court of Appeals is affirmed in part and reversed in part.
Cavanagh, Taylor, and Young, JJ., concurred with Kelly, J.

 Defendant claimed he used no force at all.

 Although the Court of Appeals did not identify its holding in People v Sanders, 28 Mich App 274; 184 NW2d 269 (1970), as employing the “transactional approach,” the concept originated there.

 Supra at 562.

 If there were any doubt that the unarmed robbery statute codified the common law, this Court dispelled it in Stout v Keyes, 2 Doug 184, 188 (Mich, 1845). In Stout, this Court rejected a claim that the common law had been supplanted by our constitution and the revised statutes. It explained that our constitution did not abrogate, but rather retained, the common law. Our revised statutes repealed only earlier laws that were repugnant to the provisions of the revised statutes. The Stout Court concluded: “In almost every part of the Revised Statutes of 1838 relating to rights and remedies, the common law is incidentally or otherwise recognized.” Id.

 1838 RS, tit 1, ch 3, § 12 provided, with regard to unarmed robbery:
If any person shall, by force and violence, or by assault or putting in fear, feloniously rob, steal and take from the person of another any money or property, which may be the subject of larceny, (such robber not being armed with a dangerous weapon,) he shall be punished by imprisonment in the state prison not more than life, or for any term of years. [Emphasis added.]
Other than stylistic changes, the only substantive modification since the first statute is the addition of the phrase “or in his presence.” This modification is itself consistent with the common-law definition of robbery. See 4 Blackstone, Commentaries, Public Wrongs, ch 17, p 242 (“But if the taking be not either directly from his person, or in his presence, it is no robbery”).

 See, also, the encyclopedic work by Joel Prentiss Bishop, a leading nineteenth century legal commentator, who stated the common law as follows: “The violence must precede or be contemporaneous with the taking. When no force is used to obtain the property[,] force used to retain it will not make the crime robbery.” 2 Zane & Zollman, Bishop, Criminal Law (9th ed), § 1168.2, p 865.
Other commentators concur with Blackstone’s view of the common law. See, e.g., 2 LaFave & Scott, Substantive Criminal Law, § 8.11, p 452 (“Thus, under the traditional view it is not robbery to steal property without violence or intimidation [e.g., to obtain it by stealth or fraud or sudden snatching], although the thief later, in order to retain the stolen properly or make good his escape, uses violence or intimidation upon the property owner. The defendant’s acts of violence or intimidation must occur either before the taking [though continuing to have an operative effect until the time of the taking] or at the time of the taking.”) 4 Torcía, Wharton, Criminal Law (15th ed), § 463, pp 33-36 (“At common law, and in some states, force or threatened force [putting a victim in fear of injury] amounts to robbery only if it is used to ‘taire’ property from the possession of another. Force or threatened force used thereafter, in order to retain possession of the property taken or to facilitate escape, does not qualify. At best, in such cases, the separate offenses of larceny and assault or larceny and battery are committed.”).
The dissent offers the views of several other common-law commentators. However, read carefully, these commentators support the definition of robbery under the common law that we have related above. For example, Odgers states that common-law robbery consisted of “the unlawful taking possession of the goods of another by means of violence or threats of violence” and that the violence must occur “at the time of or immediately before or immediately after such robbery . ...” 1 Odgers, The Common Law of England (2d ed), ch 8, p 331. This definition acknowledges that the taking must be by violence or the threat of violence. In this case, the taking occurred without violence.
Contrary to the dissent’s assertion, the use of the phrase “immediately before or immediately after” is consistent with our view that the use of force must be contemporaneous with the taking. Possibly, the dissent missapprehends the immediacy of the term “immediately.” Odgers illustrated the point with the following: “[W]here the prisoner seized the prosecutor’s watch and, on finding that it was secured by a chain around his neck, violently pulled and jerked until it broke, and then ran away with the watch, this was held to amount to robbery.” Id. at 332, quoting Rex v Harman (Harman’s Case), 1 Hale, PC 534. Thus, force applied immediately after the taking is sufficiently contemporaneous. In this case, defendant did not use force until after he had completed the taking and left the *539 store. Therefore, the use of force did not occur immediately after the taking.
Similarly, the dissent’s reliance on Rapalje’s explanation of the common law of robbery is unavailing. The dissent fails to quote Rapalje’s statement of the common-law definition of robbery:
Feloniously taking the property of another in his presence and against his will, by putting him in fear of immediate personal injury, is robbery at common law. The taking must be either directly from the person or in the presence of the party robbed, and must be by force, or a previous putting in fear. It is the previous violence or intimidation that distinguishes robbery from larceny. [Rapalje, Larceny & Kindred Offenses (1892), § 445, p 633.]
The remainder of Rapalje’s statement on robbery is no more availing to the dissent’s position. Carefully read, the entire passage supports the majority’s view rather than the dissent’s view of the common law. See id. at § 446, pp 633-637. The dissent is simply incorrect in asserting that the common-law understanding of robbery supports the “transactional approach” to unarmed robbery.

 28 Mich App 274; 184 NW2d 269 (1970).

 The dissent appears to agree that our unarmed robbery statute directly adopts and implements the common-law definition of robbery. Post at 561, n 6. However, it diverges from us when claiming that robbery is a continuing offense that is not complete until the thief reaches a place of temporary safety. This definition finds no support in the common law. None of the commentators cited by either the majority or the dissent identifies the “place of temporary safety” as an aspect of robbery. It finds no support, either, in the plain language of the statute which fails to mention, or even allude to, a “place of temporary safety.” In light of the history and text of the statute, the dissent is inaccurate in attempting to justify its preferential interpretation as true to the common law.

9 The dissent contends that we make “much of [this] quotation.” Post at 576. It asserts that Perkins states that “this quotation has been misapplied.” Id. However, the dissent misunderstands the point that Perkins was making. Perkins indicated that certain courts, in certain factual situations, had occasionally misapplied Blackstone’s view of the common law. In one case, a thief obtained a gun on the pretext of wishing to inspect it, turned it on the owner and threatened to use it before fleeing with it. Perkins criticized the court that reversed the thiefs conviction for robbery. He noted that the thief initially had mere custody of the weapon, but his possession of it was secured by the threat of force. Perkins, supra at 348-349.
The dissent claims that, in the case on appeal, defendant had only custody of the items when the security guard attempted to stop him. This view is unsupportable. In Perkin’s example, the owner willingly parted with physical control of the gun in response to the robber’s nonthreatening request. It was only after the robber obtained temporary consensual custody of the weapon that he threatened the owner and exercised possession that was inconsistent with the owner’s rights. In this case, defendant took the items and concealed them under his coat. Thus, wrongful possession and custody that were inconsistent with the owner’s rights were asserted at the time of the taking. Defendant never had rightful possession and custody of these items with the owner’s consent.
Furthermore, the quotation relied on by the dissent again supports, rather than contradicts, the interpretation of Blackstone that we have related above: “[I]f subsequent to the larceny the owner should come upon the thief and be prevented from retaking his property by force or violence, the thief would be guilty of larceny and assault, but not robbery.” Id. at 349. The use of “res gestae” in the Perkins quotation, considered in context and in light of the comments of commentators (Blackstone, Bishop, LaFave and Scott, Wharton, Odgers, and Rapajje), does not suggest an expansive “transactional” view of robbery. Rather it narrowly refers to the events occurring contemporaneously with the inking, precisely the time frame in which the application of force must occur.

 Other distinguished commentators have opined similarly. Professor Charles Torcia, current author of Wharton, Criminal Law, the well-known and often cited contemporary exposition on the criminal law, explains that at common law the use of force “amounts to robbery only if it is used to ‘take’ the property from the possession of another.” 4 Wharton, Criminal Law (15th ed), § 463, p 33. He then continues:
Force or threatened force used thereafter, in order to retain possession of the property taken or to facilitate escape, does not qualify. At best, in such a case, the separate offenses of larceny and assault or larceny and battery are committed. [Id. at 33-36.]
Similarly, Bishop in his previously cited work on criminal law states: “The fear of physical ill must come before the relinquishment of the thing to the thief, not after; else the taking is not robbery.” 2 Zane & Zollman, Bishop, Criminal Law (9th ed), § 1175, p 869.
Even the Court of Appeals recognized this rule while declining to follow it in favor of its “transactional approach”: “Both the armed and unarmed robbery statutes are clear that the forceful act must be used to accomplish the taking. . . . Unless there is a purposeful relationship between these two elements, the criminal episode is merely two isolated crimes of larceny and perhaps assault and battery.” LeFlore, supra at 562, quoting LaFave, supra.

 305 Mich 329; 9 NW2d 560 (1943).

 20 SW3d 634 (Tenn, 2000).

 Ark Code Ann, § 5-12-102.

 Nev Rev Stat, § 200.380.

 Ohio Rev Code Ann, § 2911.01.

 Wash Rev Code, § 9A.56.190.

 We agree with the dissent that escape is not an element of robbery, and this statement should not be construed to imply otherwise. We merely point out that the circumstances of this case go beyond what the Court of Appeals deemed significant, the irrelevant fact that defendant did not escape.

 Certainly, as the dissent asserts, it may be wise to wait to apprehend a thief who has not used force or violence until after he has left a populated store. In so doing, however, one would be apprehending a thief who committed larceny, not a robber.

 The dissent’s reliance on Sir Edward Coke’s definition of common-law robbery is no more illuminating. It quotes Coke for the proposition that one who begins to steal by stealth but, then, “uses force in order to complete the taking” has committed robbery. Post at 581. Again, we agree that one who uses force to take the property of another has committed unarmed robbery. We simply will not extend that proposition to force used after the taking, when the force does not serve to accomplish the taking. The dissent is incorrect in extending Coke’s definition to force used in an attempt to retain property where the taking has already been completed. Nowhere in the dissent is this significant leap supported with any legal or analytical foundation.

 The decisions of this Court and the Court of Appeals provide no support for the dissent’s view, slip op at 24, that store security’s continued observation of defendant extends the larcenous transaction. Nor do they support the view that the cessation of such observation can sever the owner’s constructive possession of the stolen property. These views, asserted without authority, directly contradict the common-law assessment of larceny illustrated by Bradovich that a larceny is complete upon the taking and concealment of the property. As we have endeavored to show, they are also inconsistent with the common-law view of robbery because the taking is accomplished without force. Certainly, the owner’s legal right to such property will always be superior to the thief’s. However, the fact remains that physical custody and control of the property, actual possession, has been acquired by the thief when he conceals the property. The property has been “robbed, stolen and taken” from the owner and that felonious taking has been accomplished without force or the threat of force.

 332 Mich 508; 52 NW2d 201 (1952).

 The dissent claims that the Legislature could not have intended that the theft of under $200 of property, followed by the thief’s violent assault on the victim, be “merely [a] third-degree retail fraud and assault, rather than the greater crime of robbery.” Post at 584. The dissent further expresses surprise that a potential fifteen-year sentence could be reduced to “punishment of no more than 93 days in jail.” Id. at 584.
As we have indicated, and as the commentators uniformly agree, at common law, a theft accomplished without force was a larceny; where the larceny was followed by the application of force, it was a larceny and an assault. It should be concluded that our Legislature was well aware of *551 the common-law view and intended to incorporate it into the statute when it codified the common law.
Finally, the sentencing prospect contemplated by the dissent, that the potential sentence would drop from fifteen years to one year, is incorrect. We are remanding this case for entry of a conviction of larceny in a building. The maximum sentence for that offense is four years, not one year. MCL 750.360 and MCL 750.503. Depending on the facts of the crime, a defendant who commits an assault following a larceny could be charged with a ninety-day misdemeanor, MCL 750.81, a one-year misdemeanor, MCL 750.81a, a four-year felony, MCL 750.82, a ten-year felony, MCL 750.84, MCL 750.86, or MCL 750.87, or life or, if the defendant intended to murder his victim, a term up to life in prison, MCL 750.83.

 As the dissent agrees, defendant accomplished a chargeable crime of larceny when he concealed the merchandise with the intent to steal it. When the security guards initiated contact with him and a physical struggle ensued, defendant lost possession of the merchandise. It defies logic to say that, when a defendant commits larceny, but loses possession of the property during a struggle, defendant’s crime can be elevated to unarmed robbery.
We recognize that one who commits retail fraud, essentially a larceny of merchandise for sale in a store open to the public, cannot be charged with larceny in a building. See MCL 750.356c(3). However, People v Ramsey, 218 Mich App 191, 194-195; 553 NW2d 360 (1996), holds that one charged with unarmed robbery can be convicted of larceny in a building, even where the underlying facts would support a finding of retail fraud. In this case defendant was charged with unarmed robbery. The jury was instructed on that and on larceny in a building, not retail fraud. Defendant concedes that he is guilty of larceny in a building. For those reasons, we remand for entry of a judgment of conviction of larceny in a building, rather than for a conviction of retail fraud. See part iv.

 Another panel of the Court of Appeals has already disavowed this portion of the Court of Appeals opinion, citing the United States Supreme Court in Burks v United States, 437 US 1, 11; 98 S Ct 2141; 57 L Ed 2d 1 (1978):
Indeed, “affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding” is the chief evil against which the Double Jeopardy Clause protects. [People v Watson, 245 Mich App 572, 597; 629 NW2d 411 (2001).]

 The elements of larceny in a building are: (1) the actual or constructive taking of goods or property of another, (2) without the consent and against the will of the owner, and (3) a carrying away or asportation of the goods, (4) with a felonious intent, (5) the taking having occurred within the confines of the building. MCL 750.360; People v Sykes, 229 Mich App 254, 278; 582 NW2d 197 (1998). Defendant admits that he committed larceny in a building. Also, the jury’s decision necessarily included a finding that defendant committed every element of the crime of larceny in a building. Therefore, a remand for entry of a conviction of that offense is appropriate. See People v Bearss, 463 Mich 623, 632-633; 625 NW2d 10 (2001).