Corrigan, C.J.
(concurring). I concur in the majority’s result for the sake of reaching a clear rule regarding the legislative sentencing guidelines and providing direction to trial courts in implementing the guidelines. I believe that offense variables 1 (OV l) and 3 (OV 3), however, contain language that may be contradictory in some cases, such as the instant case. I further believe that armed robbery is a transactional offense and thus concur with the majority’s conclusion that the trial court properly assessed defendant ten points under OV 9.
I. ARMED ROBBERY IS A TRANSACTIONAL OFFENSE
At the time that defendant and Northington committed the armed robbery in this case, the armed robbery statute, MCL 750.529, provided, in part:[1]
Any person who shall assault another, and shall feloniously rob, steal and take from his person, or in his presence, any money or other property, which may be the *264 subject of larceny, such robber being armed with a dangerous weapon, or any article used or fashioned in a manner to lead the person so assaulted to reasonably believe it to be a dangerous weapon, shall be guilty of a felony, punishable by imprisonment in the state prison for life or for any term of years.
In People v Randolph, 466 Mich 532, 551; 648 NW2d 164 (2002), a majority of this Court rejected the “transactional approach” to unarmed robbery. Under the transactional approach, “a defendant has not completed a robbery until he has escaped with stolen merchandise. Thus, a completed larceny may be elevated to a robbery if the defendant uses force after the taking and before reaching temporary safety.” Id. at 535 (citations omitted). A majority of this Court determined, on the basis of the language of the unarmed robbery statute in existence at that time and on the common-law history of unarmed robbery, that the force used to accomplish the taking must be contemporaneous with the taking. Id. at 536. In so holding, the majority overruled four Court of Appeals cases, including three involving armed robbery, People v Tinsley, 176 Mich App 119; 439 NW2d 313 (1989), People v Turner, 120 Mich App 23; 328 NW2d 5 (1982), and People v Sanders, 28 Mich App 274; 184 NW2d 269 (1970). Randolph, supra at 546.
The portion of the Randolph opinion overruling the above cases involving armed robbery is dicta because Randolph did not involve armed robbery. Further, the unarmed robbery statute at issue in Randolph, MCL 750.530, was significantly different than the armed robbery statute at issue in the instant case. The statute at issue in Randolph stated:
Any person who shall, by force or violence, or by assault or putting in fear, feloniously rob, steal and take from the person qf another, or in his presence, any money or other property which may be the subject of larceny, such robber *265 not being armed with a dangerous weapon, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 15 years. [Emphasis added.]
The armed robbery statute at issue in this case, how.ever, does not contain the above emphasized language that the Randolph majority found required a taking contemporaneous with the use of force, violence, or putting in fear. Rather, MCL 750.529 merely required an assault “and” a taking. Thus, the majority opinion in Randolph did not implicate armed robbery, and the armed robbery statute at issue in this case followed a transactional approach because nothing in the statute required that the use of force be contemporaneous with the taking.[2]
*266 II. OV 1 AND OV 3
Because armed robbery is a transactional offense, and Northington shot Bish immediately after she stole Sevakis’s purse and before she reached a place of temporary safety, the trial court’s consideration of the shooting when determining defendant’s score under OV 1 and OV 3 was arguably proper.[3] OV 1, MCL 777.31, involves the aggravated use of a weapon. At the *267 time that defendant committed the armed robbery in this case, that section provided, in relevant part:[4]
(1) Offense variable 1 is aggravated use of a weapon. Score offense variable 1 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points-.
(a) A firearm was discharged at or toward a human being or a victim was cut or stabbed with a knife or other cutting or stabbing weapon.....25 points
fti) A firearm was pointed at or toward a victim or the victim had a reasonable apprehension of an immediate battery when threatened with a knife or other cutting or stabbing weapon........15 points
(2) All of the following apply to scoring offense variable 1:
(a) Count each person who was placed in danger of injury or loss of life as a victim.
(b) In multiple offender cases, if 1 offender is assessed points for the presence or use of a weapon, all offenders shall be assessed the same number of points. [Emphasis added.]
The trial court also assessed twenty-five points under OV 3. Ov 3, MCL 777.33, involves physical injury to a victim. At the time that defendant committed the armed robbery in this case, MCL 777.33 provided, in relevant part:[5]
(1) Offense variable 3 is physical injury to a victim. Score offense variable 3 by determining which of the follow *268 ing apply and by assigning the number of points attributable to the one that has the highest number of points'.
(c) Life threatening or permanent incapacitating injury occurred to a victim.............25 points
(d) Bodily injury requiring medical treatment occurred to a victim....................10 points
(e) Bodily injury not requiring medical treatment occurred to a victim.....................5 points
(f) No physical injury occurred to a victim...................................0 points
(2) All of the following apply to scoring offense variable 3:
(a) In multiple offender cases, if 1 offender is assessed points for death or physical injury, all offenders shall be assessed the same number of points. [Emphasis added.]
Subsection 1 of both OV 1 and OV 3 required the trial court to assess the highest number of points that it could assess for each variable. Following the transactional approach to armed robbery, the trial court did so by assessing defendant twenty-five points under OV 1 because Northington discharged a firearm toward Bish. The court also assessed defendant twenty-five points under OV 3 because Bish’s gunshot wound to the chest was life-threatening. Thus, the trial court properly complied with subsection 1 of both variables and assessed the highest number of points possible under each variable.
Notwithstanding the above language of OV 1 and OV 3, subsection 2(b) in OV 1 and subsection 2(a) in OV 3 required the trial court to assess the same number of points under those variables as were assessed for Northington. The trial court assessed Northington fifteen points under OV 1 and zero points under OV 3. Thus, *269 the trial court did not assess Northington the highest number of points as subsection 1 of OV 1 and OV 3 directs. The question then is whether the trial court was obligated to assess defendant the same number of points as were assessed for Northington notwithstanding the fact that Northington was not assessed the highest number of points. The answer to this question is unclear. In these circumstances, the language of subsection 1 of OV l and OV 3 conflicts with the language of subsection 2(b) in OV l and subsection 2(a) in OV 3. The trial court could not have followed one provision without rendering the other nugatory.
Because it is the duty of the judiciary to interpret, not to write, our laws, we, as judges, are unable to correct the conflicting language of OV 1 and OV 3. Rather, that task is left to the Legislature. A practical approach to this problem would require trial courts to assess offenders in multiple offender cases the same number of accurately scored points. In that event, trial courts would be required to assess multiple offenders the same number of points only if the first offender’s assessment of points was accurate. Otherwise, trial courts would be required to assess subsequently sentenced offenders “the highest number of points.” Because the “highest number of points” provision of OV 1 and OV 3 conflicts with the “multiple offender” provision of those variables, and nothing directs which provision prevails, I concur with the majority that defendant was required to be assessed the same number of points as were scored for Northington.[6]
*270 hi. ov 9
I also concur with the majority that the trial court properly assessed defendant ten points under OV 9. Ov 9, MCL 777.39, provides, in part:
(1) Offense variable 9 is number of victims. Score offense variable 9 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
(a) Multiple deaths occurred...........100 points
(b) There were 10 or more victims.......25 points
(c) There were 2 to 9 victims...........10 points
(d) There were fewer than 2 victims......0 points
(2) All of the following apply to scoring offense variable 9:
(a) Count each person who was placed in danger of injury or loss of life as a victim.
Because armed robbery is a transactional offense and Bish was placed in danger of injury or loss of life while the robbery was ongoing, the trial court properly considered him a victim of the armed robbery under subsection 2(a).[7] Accordingly, the trial court’s assessment of ten points under this variable was correct.
IV CONCLUSION
The “multiple offender” provision of OV 1 and OV 3 conflicts with the “highest number of points” provision *271 of those variables. Accordingly, it is unclear whether the trial court assessed the proper number of points under each variable. Nevertheless, I concur with the majority for the sake of reaching a clear rule and offering guidance to sentencing courts in implementing the legislative sentencing guidelines. I urge the Legislature to amend those sentencing variables containing the above conflicting provisions. Further, I concur with the majority’s conclusion regarding OV 9. Because armed robbery is a transactional offense, the trial court properly assessed defendant ten points under OV 9.

 The Legislature amended MCL 750.529 after the armed robbery in this case. This amendment is discussed in note 2, infra.

 The Legislature effectively overruled Randolph after this Court released its decision in that case. MCL 750.530 now provides:
(1) A person who, in the course of committing a larceny of any money or other property that may be the subject of larceny, uses force or violence against any person who is present, or who assaults or puts the person in fear, is guilty of a felony punishable by imprisonment for not more than 15 years.
(2) As used in this section, “in the course of committing a larceny” includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property.
Thus, effective July 1, 2004, the Legislature has explicitly stated that unarmed robbery is a transactional offense.
The Legislature also amended the armed robbery statute, MCL 750.529, which now provides:
A person who engages in conduct proscribed under section 530 and who in the course of engaging in that conduct, possesses a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon, or who represents orally or otherwise that he or she is in possession of a dangerous weapon, is guilty of a felony punishable by imprisonment for life or for any term of years. If an *266 aggravated assault or serious injury is inflicted by any person while violating this section, the person shall be sentenced to a minimum term of imprisonment of not less than 2 years.
This case involves the version of MCL 750.529 in existence before the amendment effective July 1, 2004.

 I disagree with Justice Markman that once all the elements of the armed robbery were completed, no subsequent use of force to help Northington retain possession of Sevakis’s purse could be considered a continuation of the armed robbery. See post note 1. Northington shot Bish in an attempt to retain possession of the purse. Thus, the shooting occurred in furtherance of the armed robbery and is properly considered a continuation of the robbery under the transactional approach. If, as recognized in Justice Markman’s Randolph dissent, “a defendant has not completed a robbery until he has escaped with stolen merchandise” and reached a place of temporary safety, Randolph, supra at 535, then, contrary to Justice Markman’s contention in note 1, post, the armed robbery in this case was not complete immediately after Northington acquired Sevakis’s purse because Northington had not yet reached a place of temporary safety. Accordingly, the use of force subsequent to the actual taking itself committed in an attempt to retain possession of the purse was a part of the armed robbery. See People v Velasquez, 189 Mich App 14, 17; 472 NW2d 289 (1991) (use of force after taking in an attempt to retain possession of property constitutes force or coercion for armed robbery); People v Tinsley, 176 Mich App 119, 121; 439 NW2d 313 (1989) (because robbery is a continuous offense, the use of force after a taking in order to retain stolen property constitutes force for purposes of armed robbery statute). In any event, the views expressed by Justice Markman could not have survived the amendments of MCL 750.529 and MCL 750.530. Under those amendments, effective July 1, 2004, acts of force or violence during flight or attempted flight after acquiring the stolen property or in an attempt to retain possession of the stolen property occur during “the course of committing” the robbery. See note 2, supra.

 The Legislature amended MCL 777.31 after the crime in this case, but the amendments are not relevant to this appeal. See ante note 8.

 Like OV 1, the Legislature amended MCL 777.33 after the armed robbery in this case. The amendments do not affect the result of this case. See Justice Weaver’s opinion, note 9.

 In his concurring and dissenting opinion, Justice Young opines that the trial court properly scored defendant’s OV l and OV 3 variables in the instant case because those scores coincided with Northington’s ov i and OV 3 scores for her assault conviction. Even accepting Justice Young’s argument as correct, however, a conflict may still exist between the “highest number of points” provision and the “multiple offender” provi *270 sion in some cases. Although under Justice Young’s theory, defendant was properly scored in this case, the above provisions would still conflict in other cases if the first offender to be sentenced is not assessed the highest number of points.

 As discussed in note 3, supra, because Northington shot Bish in an attempt to retain possession of Sevakis’s purse and before she reached a place of temporary safety, the shooting was a continuation of the robbery under the transactional approach to that offense. Thus, the trial court properly considered the shooting in scoring ov 9.