Filed 3/2/16  P. v. White CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSEPH RYAN WHITE,<br><br>    Defendant and Appellant. | G050767<br><br>(Super. Ct. No. 13WF3583)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Dan McNerney, Judge.  Affirmed.

Patrick Morgan Ford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Joseph Ryan White of an "Estes" robbery (*People v. Estes* (1983) 147 Cal.App.3d 23 (*Estes*)) and commercial burglary. White claims the court erred by refusing his pinpoint robbery instruction and by providing an inadequate response to a related jury question. He also claims his burglary conviction must be reduced to a misdemeanor under Proposition 47. We reject White's error claims, affirm the judgment, and conclude he must seek Proposition 47 relief in the trial court.

## FACTS AND PROCEDURAL SUMMARY

*1. Trial Testimony*

Jibri Jackson was a loss prevention officer at a Rite-Aid store. Jackson testified he saw White walk inside the store carrying a plastic shopping bag. Jackson watched White put store merchandise into the shopping bag and leave without paying for it. Jackson followed White outside.

Jackson, who is five feet, nine inches tall, and weighed about 215 pounds, testified he ran in front of White, showed White his security badge and said, "Excuse me, sir, store security." White looked at him, but kept walking. Jackson allowed White to walk by, but stepped in front of White's car door. He told White to stop or he would call the police.

Jackson said White did not comply. Instead, White raised his forearms, pushed Jackson back against the car, and elbowed Jackson's face. Jackson grabbed White and put "him [on] the ground." White resisted by kicking and using his hands. Jackson, the store manager, and police officers subdued him.

The store manager testified, "I seen Jibri follow the gentlemen out the door, and . . . told him to stop, to come back, that he was loss prevention. And at that point he panicked, ran to his car, tried to get in it, and there was a struggle. He ran around the front of the car and then they ran back . . . . And at that time they fell to the floor, started wrestling and he was detaining him on the floor. . . . And Jibri needed help, so I ended up holding his legs down. . . ."

White testified he heard someone "running and yelling behind me 'hey, you need to come back inside the store.'" White said he continued walking to his car. Jackson moved in front of him and said, "You need to come back inside now or you are going to go to jail." White claimed he responded, "You know what, I'm sorry, I apologize. I can't go to jail today. You can have your items back," and then threw the shopping bag to the ground.

In White's mind, "either [he was] going to get away with this bad decision or I'm going to just give the items back because it's not that serious." To White's surprise, Jackson said, "It's too late for that now. You are coming with me." White testified he tried to walk away after he tossed the shopping bag, but Jackson twice pushed him and pinned him down on the ground until the police arrived.

On rebuttal, Jackson testified White did not offer to return the merchandise before the physical altercation began.

## 2. Jury Instructions

In her closing argument, White's counsel conceded White "did take items with the intent to keep them and he did move them a certain distance," but she maintained White was not guilty of robbery because "the minute he got confronted and told that he was going to have the police called, he relinquished the items." Thus, she informed the jury he was guilty of theft by larceny, but not robbery.

In keeping with this defense, White's counsel requested a pinpoint jury instruction on abandonment of stolen property, which stated: "A robbery occurs where a perpetrator achieves possession of the property in the victim's immediate presence without the use of force or fear, then uses force or fear during asportation in order to retain possession of the property. If you find that the defendant abandoned the stolen items prior to the use of force, then you must find the defendant not guilty of a robbery."

Following an unreported chambers discussion, the court stated:

"After reviewing the case and the pinpoint instruction and understanding that part of the defense theory is A, that the defendant did not use force and, B, if he did, he used force after the property was abandoned, I am in partial agreement with defense and I believe prosecution agrees 1600 as drafted by the committee appears to be somewhat inadequate as it relates to *Estes* robberies. Particularly it is inadequate as to – in the court's view, as to element number 5, CALCRIM 1600, element 5 reads: 'the defendant used force or fear to take the property or prevent the person from resisting.'

"As it relates to an *Estes* robbery, I believe the appellate court in *Hodges*, which is at 213 Cal.App.4[th] 531, at page 1137 indicates that element 5 in an *Estes* robbery should read, 'Defendant used force with intent to retain property or to prevent its recovery by the lawful owner.'

"I'm of the view as it relates to an *Estes* robbery in general and in this case in particular, that that language is the appropriate language the court should use as to element number 5 in this particular case."

In keeping with these statements, the court gave the jury a modified version of CALRIM No. 1600, which stated, in pertinent part, that "[t]o prove the defendant is guilty of [robbery] the People must prove: [¶] 1. The defendant took property that was not his own; [¶] 2. The property was in the possession of another person; [¶] 3. The property was taken from another person or his immediate presence; [¶] 4. The property was taken against that person's will; [¶] 5. *The defendant used force to take or retain the property or to prevent its recovery by the lawful owner*; and [¶] 6. When the defendant used force to take the property, he intended to deprive the owner of it permanently. [¶] . . . The defendant's intent to take property must have been formed before or during the time he used force or fear. If the defendant did not form this required intent until after the force, then he did not commit robbery. [¶] . . . [¶] The People must prove the defendant used force in the commission of a robbery." (Italics added.)

4

The court also gave CALCRIM No. 3261, which states, "The crime of robbery continues until the perpetrator has reached a place of temporary safety. The perpetrator [has] reached a place of temporary safety if he has successfully escaped from the scene, is no longer being chased and he has unchallenged possession of the property." And, the court gave CALCRIM No. 1800 on petty theft by larceny as a lesser offense.

*3. Jury Question*

During deliberations, the jury requested the following: "1. Further definition of the word 'force'; only physical? [¶] 2. Is the struggle the 'force' factor [¶] 3. Or – when told to return, defendant continued to refuse to cooperate [and] to leave with possessions, [¶] 4. The defendant[']s attempts to leave constitute force/forceful fighting to depart." The court drafted a response which both counsel agreed was a "correct statement of the law with regard to force raised in the question."

But White's counsel also said, "I think the jury is hitting upon some of the issues that an *Estes* robbery centers around and that CALCRIM 1600 and CALCRIM 3261, even with the jury instruction – or the answer that the court is providing to the jury, I still don't think it clarifies exactly what point 3 and 4 on the juror question are talking about. And that movement, that issue I think is what *People versus Hodges* is speaking to, that a robbery has to occur when force is used to take the property . . . ."

The court brought in the jury and asked for clarification. The foreperson replied, "I think, your honor, when we requested a further definition of the word *force*, we were wanting to understand if it pertained to just physical force, or whether a forceful departure or and attempt to evade a request to stop." The court replied, "The force required for a robbery is more than just the quantum of force necessary to accomplish the mere taking or removing of the property. The force necessary for a robbery does not require a physical assault. Force may include a display of physical aggression toward a person that reasonably inspires fear of pain or bodily harm." The foreperson said, "That answers the question, your honor."

5

After the jury was excused, White's counsel again requested the pinpoint instruction on the abandonment of stolen property. She asserted: "I still think that even though the foreperson responded that that answers the question, part four still indicates the attempt to leave and the forceful fighting to depart. *I think the jurors have to make a decision about whether or not Mr. White had possession of the property at that time that he is engaging in forceful fighting to leave. And I think that without the pinpoint instruction it's incomplete and unclear to the jury.*" (Italics added.)

The court refused to give any further instructions, stating, "I asked not only the foreperson, but the entire jury whether the court's response answers the question and they all nodded in the affirmative and I don't know if there's authority to further instruct them after they state [the court's response] answers their question." Later, after the jury informed the court they had a verdict, White's counsel asked to reopen closing argument. The court denied that request and took the verdict.

## DISCUSSION

Relying on common law robbery principles and Michigan case authority (*People v. Randolph* (Mich. 2002) 648 N.W.2d 164), White first urges this court to critically review and jettison the reasoning of *Estes*. He argues the *Estes* decision is an improper judicial expansion of the legal definition of robbery. But the California Supreme Court has approved the reasoning of *Estes* several times since 1983 (*People v. Gomez* (2008) 43 Cal.4th 249, 260-265; *People v. Cooper* (1991) 53 Cal.3d 1158, 1165, fn. 8), and we are bound to follow the decisions of our Supreme Court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

White next argues the court's refusal to give his pinpoint instruction violated his constitutional right to due process of law, and Penal Code sections 1038, subdivision (f) and 1093. The Attorney General asserts the court's modification of CALCRIM No. 1600 adequately addressed the points asserted in defendant's pinpoint instruction. We agree with the Attorney General.

6

Defendants have a "'right to have the jury determine every material issue presented by the evidence.'" (*People v. Flood* (1998) 18 Cal.4th 470, 480-483; Cal. Const., art. VI, § 13.) Our Supreme Court has said that "''in appropriate circumstances' a trial court may be required to give a requested jury instruction that pinpoints a defense theory of the case . . . . [Citations.] But a trial court need not give a pinpoint instruction if it . . . [citation], merely duplicates other instructions[.]" (*People v. Bolden* (2002) 29 Cal.4th 515, 558.) In determining the correctness of jury instructions, we consider the instructions as a whole. (*People v. Carrasco* (2006) 137 Cal.App.4th 1050, 1061.)

White testified he was walking toward his car with stolen property, he knew Jackson was behind him, and he discarded the plastic shopping bag when Jackson blocked his path and made his escape impossible. Based on that testimony, White wanted the pinpoint instruction noted above.

But the modified CALCRIM No. 1600 given here specifically told the jury a conviction had to be based on evidence defendant used force to take or retain property, or to prevent the owner from recovering his or her property. Although it did not use the word abandon, the court's modification of CALCRIM No. 1600 both addressed White's defense and defined the force or fear element of robbery according to the facts. In our view, White's pinpoint instruction merely duplicated other properly given instructions, and the court had no obligation to give it. (*People v. Catlin* (2001) 26 Cal.4th 81, 152.)

Finally, White emphasizes the jury asked for: "1. Further definition of the word 'force'; only physical? [¶] 2. Is the struggle the 'force' factor [¶] 3. Or – when told to return, defendant continued to refuse to cooperate [and] to leave with possessions, [¶] 4. The defendant[']s attempts to leave constitute force/forceful fighting to depart."

But the court's answer to that question was a correct statement of the law (*People v. Cooper*, *supra*, 53 Cal.3d at p. 1165, fn. 8; *Estes*, *supra*, 147 Cal.App.3d at p. 27) and it was responsive to the jury's question. (Pen. Code, § 1138.) Therefore, we find no error in the court's robbery instructions, or in its response to the jury's question.

7

White also claims he is entitled to have his burglary conviction reduced to a misdemeanor under Proposition 47 on remand.  The Attorney General concedes White can petition for relief in the trial court once the remitittur is issued and the judgment becomes final.  We conclude White must file in the trial court either a petition or an application for Proposition 47 relief, depending upon whether he is currently serving, or has completed, his burglary conviction sentence.  (Pen. Code § 1170.18, subds (a), (f).)

**DISPOSITION**

The judgment is affirmed.


THOMPSON, J.

WE CONCUR:


O'LEARY, P. J.


FYBEL, J.